UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANTYWANE ERIC WILLIAMS #463325          CIVIL ACTION NO. 19-cv-608 SEC P

VERSUS                                  CHIEF JUDGE HICKS

TIMOTHY HOOPER                          MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

A Bossier Parish jury convicted Antywane Eric Williams ("Petitioner") of attempted aggravated rape and home invasion. His convictions were affirmed on direct appeal. State v. Williams, 149 So.3d 462 (La. App. 2d Cir. 2014), writ denied, 173 So.3d 1167 (La. 2015). The state court also denied a post-conviction application. Petitioner now seeks habeas corpus relief on several grounds. For the reasons that follow, it is recommended that the petition be denied.[1]

**Sufficiency of the Evidence**

### A.  Introduction; Elements of the Offenses

Petitioner was arrested after breaking into the home of his former girlfriend, P.T., and assaulting her. He was charged with attempted aggravated rape and home invasion.

---

[1] This is not petitioner's first civil action in this court. He filed an earlier habeas petition, 16-cv-0605, that was directed at these same convictions. He also filed a habeas petition in 16-cv-1181, and the court ordered that petition be docketed as an amended petition in 16-cv-0605. The combined petitions were dismissed without prejudice because Petitioner had not yet exhausted his state court remedies. Petitioner also filed a civil rights complaint, 15-cv-2805, directed at the trial judge, prosecutor, and defense attorneys in the state court criminal case at issue. The Fifth Circuit affirmed this court's dismissal of the case as frivolous and warned that Petitioner had earned two strikes under 28 U.S.C. § 1915(g).

He challenges the sufficiency of the evidence with respect to both convictions, which requires consideration of the elements of the offenses in light of the evidence presented.

Louisiana law defines rape as sexual intercourse committed without a person's lawful consent.  La. R.S. 14:41.  Aggravated rape includes a rape committed when the victim resists the act to the utmost, but the resistance is overcome by force.  La. R.S. 14:42(A)(1) & (2).  An attempt is committed when a defendant, after having formed the intent to commit rape, does an act for the purpose of and intending directly toward the accomplishing of the objective.  La. R.S. 14:27(A).

Petitioner was also charged with home invasion.  Louisiana law defines it as the unauthorized entering of an inhabited dwelling belonging to another and used in whole or in part as a home, where a person is present, with the intent to use force or violence upon the person of another.  La. R.S. 14:62.8(A).

### B.  P.T. (the Victim; Tr. 333)

P.T. testified that she was previously in a relationship with Petitioner for eight years. They were never married, but he did live with her on and off during that time.  About three months before the incident at issue, the couple broke up and had not lived together since that time.  They did talk some, mainly about him wanting to get back together and her saying no.  P.T. communicated clearly to Petitioner that he was no longer welcome at her home.  P.T. rented the home individually; Petitioner was not named on the lease.

Petitioner texted P.T. one night at about 9:00 p.m. to say that he was going to come over so they could talk about reconciliation, but P.T. told him no.  About an hour later, P.T., who was wearing pajamas, was alerted to Petitioner's presence when her three pit

bulls started barking.  She went to check on the dogs and discovered Petitioner coming through her kitchen window.

P.T. testified that Petitioner had tried to come in her house on another occasion, during which he banged on the windows and doors.  After that, she made sure the doors and windows were always locked, but the locks on the windows of the older home were not well-secured.  P.T. said that she tried to push Petitioner back out the window and told him that she did not want him there.  When she realized she could not get him out of the window, she ran towards the bedroom in an effort to get her cell phone and call 911.  She described the next events as follows:

> And Mr. Williams followed me into my bedroom.  And he pushed me into the bed and I was telling him don't, you know, he's like, I just want to make love to you one more time.  And I'm like, no, you know, please stop.  And I was yelling stop.  And Mr. Williams continued trying to get on top of me and I got to the point where I couldn't breathe because I was hyperventilating so bad that he stopped.  I told him, I said, I can't breathe, I can't breathe.  So he gets up, and so he lets me sit up, and when I go to sit up I try to run out the door.  And when I go to run out the door he grabs my shorts and he pulls them down and he throws me back on the bed.  (P.T. testified that she was not wearing anything underneath her pajama shorts.)  And I'm like, I can't breathe, you've got to let me up, you've got to let me up.  And that's when he let me up again and I had no shorts on at the time.  And I dodged out to the door from the kitchen, and I have a back door out the back of the kitchen, and that's when he grabbed me.  And I really don't know how I got away from him but I ran outside the back door and he started chasing me.  And I was running around my truck and screaming at the top of my lungs for help.  And that's when the neighbor heard me and called the police.

P.T. testified that Petitioner "always drank," and she could smell alcohol on him during the encounter.  She begged him to please look at what he was doing because "this is not you because you're drunk and you're high."  She also said that she poked Petitioner in the eyes during the struggle but could not fight him off.  One of her pit bulls bit him

while he chased her around the truck.  A neighbor testified that P.T. was yelling loud enough that he could hear her across the street and two houses down.  He saw a man chasing her around a vehicle, and he let her use his phone to call the police.  Tr. 359-63.

### C.  Police Officers

Detective Kevin Jones (Tr. 365-70) was dispatched to the scene that night.  He encountered P.T., who was visibly upset and crying.  She described the incident.  Jones saw P.T.'s pajama bottoms at the end of her bed, consistent with her description of the incident.  Petitioner was quickly arrested in the area and brought back to the home.  Jones noted that he had a scratch on his thigh and one of his pants legs was torn, which corroborated the dog bite described by P.T.

Office Tuttle (Tr. 371-76) also observed that P.T. was upset and crying.  He testified that he found the shorts on the bed as described by P.T., and he collected them as evidence. Officer Matthew Camp (Tr. 377-82) arrested Petitioner based on P.T.'s description of Petitioner and his car.  He found Petitioner about four blocks from the home, where Petitioner had driven into a ditch.  He was stumbling and appeared to be intoxicated or impaired in some way.  When he began to talk to Petitioner, he smelled a "very strong odor" of alcohol.

### D.  Analysis

In evaluating the sufficiency of the evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).  The Jackson

inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

Petitioner challenged the sufficiency of the evidence on direct appeal.  The state appellate court set forth the Jackson standard and conducted a detailed review of the testimony and evidence.  The court looked primarily to the testimony of P.T., and it noted that the testimony of the victim alone can be sufficient to convict a defendant even where the State does not introduce scientific or physical evidence.  P.T. testified that Petitioner chased her inside her home, held her down on the bed, said he wanted to have sex with her, pulled off her shorts, resisted her struggles—including pokes in the eyes—and even chased her outside the home when she broke away and fled.

The state court determined that a rational juror could have heard that evidence and found that P.T. resisted to her utmost, and that Petitioner attempted to overcome that resistance by force and rape her without consent.  The court also found that a rational juror could have viewed the evidence in the light most favorable to the prosecution and found beyond a reasonable doubt that Petitioner was guilty of home invasion for invading P.T.'s home, where she was present, with the intent to use force or violence upon her person. State v. Williams, 149 So.3d at 466-70.

Petitioner's habeas petition lists sufficiency of the evidence as one issue and voluntary intoxication as another.  The intoxication issue was considered by the state court when assessing the sufficiency of the evidence.  Under Louisiana law, voluntary intoxication will not excuse a crime, but it is a defense to a specific intent offense

if the circumstances demonstrate that intoxication precluded formation of the requisite intent. La. R.S. 14:15(2). "The defendant has the burden of proving his intoxication defense; thereafter, it falls to the state to negate that defense by showing beyond a reasonable doubt that specific intent was present despite the defendant's alleged intoxication." State v. Mickelson, 149 So. 3d 178, 183 (La. 2014). "Whether voluntary intoxication in a particular case is sufficient to preclude specific intent is a question to be resolved by the trier of fact." Id.

The jury heard evidence that Petitioner had been drinking and appeared to be intoxicated. But the jury also heard evidence that Petitioner had the ability to break in a locked window and crawl through it into the home, hold P.T. down, clearly state his sexual desires, chase the victim inside and outside her home, and drive away from the crime scene after his efforts were thwarted and the victim yelled for help and the police. Without additional evidence of intoxication, the appellate court held, Petitioner did not prove that his intoxication prevented any specific intent to commit attempted aggravated rape. State v. Williams, 149 So.3d at 469-70.

Petitioner's sufficiency of the evidence claims were adjudicated on the merits in the state court, so he is entitled to habeas relief only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may

not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard.  Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

When assessing the sufficiency of the evidence, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).  The conviction in this case rested largely upon the credibility of P.T.'s testimony.  "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review." Schlup v. Delo, 115 S.Ct. 851, 868 (1995).  A rational juror, viewing the evidence in the light most favorable to the prosecution, could have found Petitioner guilty beyond a reasonable doubt.  And the state court's decision was not an objectively unreasonable application of Jackson.  To the contrary, it was an entirely reasonable decision.  Petitioner's challenge to the credibility of the witnesses, and his other challenges to the weight that should be afforded to various items of evidence, do not come close to satisfying the Jackson standard and the even more demanding requirement of Section 2254(d).  His challenge to the sufficiency of the evidence does not permit habeas relief.

**Lack of Subject Matter Jurisdiction**

Petitioner argues that the state trial court erred when it did not sua sponte examine subject matter jurisdiction.  Plaintiff devotes a paragraph to this argument, but he cites no state law and refers to no facts that would suggest how the state court lacked jurisdiction.

Under the Louisiana Constitution, a district court has original jurisdiction of all criminal matters and exclusive original jurisdiction of felony cases.  La. Con. Art. 5 §

16(A).  Louisiana Code of Criminal Procedure Article 16 provides that courts have the jurisdiction and powers over criminal proceedings that are conferred upon them by the constitution and statutes of the state.  Petitioner was charged with committing felonies within Bossier Parish, and he was prosecuted in the Bossier Parish District Court.  The trial court had jurisdiction, so this claim lacks merit under state law.  State v. Girod, 195 So.3d 1274, 1284 (La. App. 5th Cir. 2016).

The trial court held a hearing and took up the jurisdictional claim when Petitioner raised it in a post-conviction application.  It does not appear that the transcript of the hearing is in the record, but a later ruling quotes the entire portion of the hearing that related to this issue.  It consisted of Petitioner stating that his "main contention is the lack of subject matter jurisdiction of the court" and saying that that was all of his argument.  Tr. 950-51.  It appears that the state courts summarily denied the claim.

There does not appear to be any basis for the claim under state law.  More important, Petitioner has not established a violation of federal law as required to warrant habeas relief.  Federal habeas corpus relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 102 S.Ct. 1558, 1567 (1983).  This claim must be denied.

**Falsifying Transcripts/Records**

Petitioner argues that the state court violated the constitution because the "[s]tenographer/court reporter breached her public duty to transcribe/authenticate verbatim

the entire record of the true facts therein, as to, the window jam." This is the full extent of Petitioner's argument on this issue.

When Petitioner presented this claim in his post-conviction application, the state trial court denied the claim because Petitioner "does not point out exactly which documents were changed or where in the transcript it was doctored." Tr. 953. The appellate court denied a writ application "on the showing made" (Tr. 974), and the Supreme Court of Louisiana denied writs in a per curiam that stated Petitioner "shows no lower court error." Tr. 976-77.

Petitioner's lack of explanation means this claim relies solely on a conclusory assertion. The only jamb-related testimony that the court has seen is where the victim testified that she locked her windows. The prosecutor asked her if there was a space between the window and the jamb that a credit card or other object could be inserted through to open the window, and she agreed that there was. Tr. 337-38. There is no indication of error with regard to the testimony, which is not critical to the case. Even if the window had been unlocked or open, that would not have justified Petitioner crawling through it uninvited.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). In addition, "mere conclusory allegations

do not raise a constitutional issue in a habeas proceeding." Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983).  Petitioner has offered no more than conclusory allegations of an alleged error or mistake in the transcript.  Given his lack of specificity, the state court's decision does not come close to permitting habeas relief under the Section 2254(d) standard.

**Ineffective Assistance of Counsel**

Petitioner argues that his trial counsel rendered ineffective assistance because she (1) withheld from him an incident report that was furnished during discovery and (2) waived a preliminary examination without consulting him.  To prevail on such a claim in state court, Petitioner had to establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

The state trial court denied both post-conviction claims.  The court first noted that trial counsel is given great deference in deciding trial strategy and tactics.  With respect to the preliminary examination, Petitioner argued in the state court that waiver of the hearing was a missed opportunity because the State would have had to come forward with all of its evidence, which would allow a preview of its case.  The trial court stated that Petitioner was mistaken because a preliminary examination requires only a showing of probable cause, not a presentation of all evidence.  And as for obtaining access to the prosecution's evidence, the State had represented that "open discovery was allowed to the defense counsel" in this case, which provided counsel with the information that could have been

obtained in a preliminary examination.  The court's decision mentioned the claim that counsel did not share all discovery with Petitioner, but that claim was not subject to further discussion in the decision that denied all claims.  Tr. 950-53.  As noted above, the appellate and supreme courts summarily denied writ applications.

Petitioner's ineffective assistance of counsel claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).  For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

Petitioner has never made clear in state court or this court what particular item of discovery counsel failed to share with him and how that might have changed the outcome of the trial had he seen it.  Counsel's election to not demand a preliminary examination was a decision that is routinely made by counsel in similar circumstances, especially where the prosecution freely provides discovery materials.  Petitioner has not demonstrated that the state court's adjudication of his Strickland claims was unreasonable.  Habeas relief is

allowed only for "extreme malfunctions" in the state criminal justice system.  <u>Harrington</u> <u>v. Richter</u>, 131 S.Ct. 770, 786 (2011).  This is not such an occasion, so Petitioner is not entitled to habeas relief.

Accordingly,

It is recommended that the petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>See</u> <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court

to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of October, 2021.

Mark L. Hornsby
U.S. Magistrate Judge